# Lennig *v.* Tobey.

[JANUARY 27, 1851.]

Notice of protest for non-payment of a promissory note, *personally* delivered, on the proper day, is not vitiated by being post-dated; the mistake being one which could not have misled the endorser.

ERROR to the District Court of Philadelphia.

The facts of the case fully appear in the opinion of the court below, which was delivered on the 23d of September, 1848, by

STROUD, J.—This was an action of assumpsit on a promissory note for $727,08, dated January 22, 1846, made by Thomas Mercer, Son & Co., payable four months after date, to the order of the defendants, by whom it was endorsed, and delivered to the plaintiff. The parties resided in this city, and the note was made here. One of the pleas was, that the defendants had not due notice of the non-payment of the note.

On the trial, the plaintiff having read the promissory note, called Francis J. Troubat, Esq., notary public, who testified as follows: " On the 25th of May, 1846, at the request of the Mechanics' Bank, I presented this note to the makers, at their counting house on the wharf, and demanded payment. They declined payment, saying it was an affair of the endorsers. I went immediately to the counting house of the endorsers, the defendants, on the wharf, about a square off. I had the notice of protest in my pocket. I handed it to one of the defendants. This is the notice. This notice was then read as follows:

" *Philadelphia, May* 26, 1846.

" Payment of Thomas Mercer, Son & Co.'s note, in favour of yourselves, and by you endorsed, for $727,08, and delivered to me for protest, by the Mechanic's Bank

[ Lennig *v.* Tobey. ]

of the city and county of Philadelphia, the holders, being this day due, demanded and refused, it has been by me duly protested accordingly, and you will be looked to for payment, of which you hereby have notice."

The notice was addressed to the defendants. The witness continued: " I made a mistake in the date of this notice. It should have been dated the 25th of May, instead of the 26th."

The counsel of the defendants contended, that this evidence was insufficient to charge the defendants as endorsers of the note, and cited *Etting* v. *Schuylkill Bank*, 2 Barr, 355. The judge, reserving the point, told the jury the evidence, if believed, was sufficient. The verdict was for the plaintiff. The only question is, was this direction right?

Mistakes, not only of time but of other circumstances, in notices to parties, are of frequent occurrence, and have again and again been the subjects of judicial determination. And the test which has been generally applied has been whether or not the mistake has misled. In some instances the court has decided directly, and in others, referred the question to the jury.

In *Eldon* v. *Haig*, 1 Chitty's Reports, 11, notice of executing a writ of inquiry, " on Wednesday, the 11th of June, instant," when Wednesday fell on the 10th of June, on which day the writ of inquiry was executed, was held sufficient, and the court refused to set aside the execution of the writ of inquiry, the defendant not swearing that he was misled thereby. A similar decision had been previously made in *Batten* v. *Harrison*, 3 Bos. & Pul. 1.

Again, on the very subject of notice to endorsers of the non-payment of notes by the makers, the same principle has been applied through the instrumentality of the jury. Thus, in *Smith* v. *Whiting*, 12 Mass. R. 8, where, in the notice the name of the maker of the note was erroneously given, and the note was stated to have become due before the days of grace had expired, it was left to the jury to

say, whether the endorser had thereby been misled. The jury found that he had not, and the court in banc sanctioned the ruling on the trial. *Reedy* v. *Seixas*, 2 Johns. Cas. 337, furnishes a similar example. And in *Ontario Bank* v. *Petrie*, 3 Wend. 456, it was held, that where in a notice of non-payment dated on the day that a draft fell due, it was stated that the draft had been protested on the evening before for non-payment, and that the holders would look to the endorsers for payment, it was proper to submit the question to the jury, whether or not the endorsers had been misled. But the authority of this case has been since overthrown by a decision of the same court, in *Ransom* v. *Mack*, 2 Hill, 588. There a note became due on the 3d of July, and payment of the maker was then demanded, but the notice stated that it had been demanded on the 4th, and then refused. The circuit judge, relying on *Ontario Bank* v. *Petrie*, submitted to the jury the question whether the endorser had or had not been misled by the notice. The supreme court reversed the judgment in consequence of this ruling, on the ground that the facts having been ascertained, it was the duty of the court to declare the law, and that, in judgment of law, no notice had been given to the endorser.

The principle of *Ransom* v. *Mack*, has been acted upon by the supreme court of this state, in *Elting* v. *The Schuylkill Bank*, 2 Barr, 355. The mistake in the notice in this case was in dating it one day too early—on the second day of grace—and informing the endorser that payment had been demanded on that day. In point of fact, the demand had been at the proper time, and was so stated in the protest, which was given in evidence without objection. Here, the court below acted in accordance with *Smith* v. *Whiting*, *Reedy* v. *Seixas* and *Ontario Bank* v. *Petrie*, already particularly noticed, and submitted the question of mistake to the jury. The judgment was reversed.

The reversal was put on two grounds. 1. That as the

[ Lennig *v.* Tobey. ]

protest was the act of a foreign notary, " it was evidence of the fact of protest, but of nothing else." There was, therefore, no evidence whatever of demand, and refusal to pay, and so the jury ought to have been directed. This glaring defect in the evidence of the plaintiff, owing most probably to the absence of the retained counsel of the defendant, and the introduction of other counsel on the spur of the moment, was overlooked at the trial.

2. The other ground—the submission to the jury to determine as to the supposed conflict of evidence, or, as it was viewed in the supreme court, the effect of the mistake of day in the written notice of non-payment, was fully considered in that court, and the cogent reasoning of the chief justice by whom the opinion was delivered, led to a result equally fatal to the judgment below.

On the argument on the rule for a new trial in the present case, the defendant's counsel relied upon the authority of the two decisions last referred to. And if they were directly in point, as he seemed to think, he would be entitled, most certainly, to our judgment. As to the case of *Ransom* v. *Mack*, it comes to us as the unanimous opinion of the judges of the supreme court of New York, sustained if not founded upon a then recent decision of the court of errors, the highest judicial tribunal in that state. And in respect to *Etting* v. *The Schuylkill Bank*, it is our plain duty in this, as it is alike our practice and our duty, in all cases vouching the same authority, to yield implicit obedience.

The facts of those cases, however, are not analogous to the facts of the case now before us. Where the time stated in the notices had already passed, the parties addressed might naturally, if not necessarily, have been misled. While to assert that a series of transactions had taken place on a day then future, was an absurdity because an impossibility, by which no one could have been deceived.

The determination of this case, then, depends essentially

[ Lennig *v.* Tobey. ]

upon this difference in its facts from the facts of all the decisions already mentioned.

It is well settled mercantile law, that notice of the dishonour of a promissory note or bill of exchange, need not be given in writing. It may be communicated orally to the party to be affected by it. It may, of course, according to the will of the person charged to make it, be partly oral and partly written.

Here the plaintiff proved by the notary, that payment was demanded and refused on the 25th of May, which was the proper time, and that on the same day, immediately afterwards, he put into the hands of one of the defendants, at their counting house, a written notice of the dishonour, which was accurate in all respects but one: namely, that it was post-dated a single day. The promissory note was truly described—it was stated to have become due, been demanded, refused and thereupon duly protested. The endorsers were, moreover, warned that they would be looked to for payment.

Being parties to the note, the defendants were bound to know at what time it fell due. They knew, therefore, that that time was the 25th of May—they knew, too, that the notice was handed to them on that very day; and its contents showed plainly that it had been inadvertently postdated by the notary.

We consider the true view of the case to be this:—The 26th of May not having yet arrived, was, when the notice was served an impossible day, and on that account should be altogether disregarded. The notice must be treated as not having a written date. The time of its delivery, which was personal to the defendants, as proved by the notary, is to be taken as its proper date, and its contents in all other respects, to be read in reference to it.

Apart from the reasonableness of such a procedure, which carries with it its own commendation, there is not wanting strong authority to sustain it. In *Doe on the de-*

*mise of the Duke of Bedford* v. *Knightley*, 7 T. R. 63, on the trial of an ejectment, the defendant, who was tenant to the lessor of the plaintiff, objected to the notice to quit, which was served just before Michaelmas, 1795, and was to quit "at Lady-day, which will be in the year 1795." The plaintiff was hereupon non-suited, but upon a motion to set aside the nonsuit, the court in banc made the rule absolute, Lord KENYON, C. J., saying, "the time when the notice was given, and the words in it, 'which will be,' manifestly showed that this was a notice to quit at the then next Lady-day. Then the year 1795, in the notice, may be rejected, as an impossible year."

So, where the "writ was tested on the 28th of November, in the forty-ninth year of his majesty's reign, and was returnable in eight days of St. Hilary, but the notice required the defendant to appear on the 20th day of January, 1808;" a rule was obtained to show cause why the proceedings should not be set aside.

Here the writ was tested subsequently to the day at which the party, by the notice at its foot, was required to appear, and although the statute of 5 G. II. c. 27, was express that no process should be good without an English notice at the foot to explain the writ, and it was urged that an ignorant defendant could not know from this when he was to appear; yet the court discharged the rule, observing "that as the notice was to appear at the return of the writ, which was tested subsequently to January, 1808, no man could understand it to require an appearance in January, 1808. The defendant must know, that his appearance was required at a future and not on a past day. It was, therefore, an immaterial mistake, which could do no harm, for what other day could occur to him than the 20th of January, 1809? It was quite impossible that the party should not understand that to be the year intended." *Steel* v. *Campbell*, 1 Taunt. 424.

As no reason is perceived for a difference in the law re-

[Lennig *v.* Tobey.]

gulating bills of exchange and promissory notes, or a subject of this kind, from the law of landlord and tenant, or that which concerns process of courts, the rule for a new trial should be discharged, and judgment entered for the plaintiff on the verdict.

The defendant below sued out a writ of error upon this judgment, and assigned for error the judgment of the court below upon the point reserved. The case was argued, in the supreme court, by *G. M. Wharton*, for plaintiff in error, and *E. S. Miller*, in reply; and, on the 27th of January, 1851, the Chief Justice delivered the opinion of the court, affirming the judgment.